IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ANDY PHAM,                                          )
                                                    )
              Plaintiff,                             )
                                                    )
       v.                                            )
                                                    )     1:25-cv-592 (LMB/WEF)
FRANK J. BISIGNANO, Commissioner of                 )
   Social Security,                                  )
                                                    )
              Defendant.                             )

MEMORANDUM OPINION

Plaintiff Andy Pham ("Pham") brought this action pursuant to 42 U.S.C. § 405(g) to

obtain judicial review of a final decision by the Commissioner of the Social Security

Administration ("the Commissioner") denying Pham's application for disability insurance

benefits under Title II of the Social Security Act.  Pham argues that the administrative law judge

("ALJ") failed to provide sufficient reasons for discounting the medical opinions of Dr. Nathan

Tran ("Dr. Tran"), Pham's treating physician, in violation of the treating physician rule that

applied to his claim, which requires ALJs to give controlling weight to a treating physician's

medical opinions absent persuasive, contradictory evidence.  The Commissioner argues that the

ALJ's decision was supported by substantial evidence and that the ALJ properly considered Dr.

Tran's medical opinions.  The parties filed Cross-Motions for Summary Judgment, and the Court

held a hearing at which Pham's Motion for Summary Judgment was granted, the

Commissioner's Motion for Summary Judgment was denied, and the Commissioner's denial of

Pham's application for benefits was reversed by an Order that remanded Pham's application to

the Commissioner for a calculation of the benefits to which Pham is entitled.  This Memorandum

Opinion explains in more detail the reasons for this decision.

I.

The Social Security Act provides that disability benefits shall be available to those persons who are insured for benefits, who are not of retirement age, who have properly applied for benefits, and who suffer from a disability. 42 U.S.C. § 423(a). Relevant here, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the applicable regulations reduce the process for determining whether a claimant meets the statutory definition of "disability" to a series of five sequential steps. First, the ALJ must determine whether the claimant has been engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant has been working, the ALJ must find that the claimant is not disabled. Id. Second, the ALJ must consider the "medical severity" of the claimant's impairment. Id. § 404.1520(a)(4)(ii). If the claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement," the ALJ must find that the claimant is not disabled. Id. Third, the ALJ must determine whether the claimant suffers from an impairment contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. § 404.1520(a)(4)(iii). If the claimant's impairment "meets or equals one of [those] listings," the Commissioner will find that the claimant is disabled. Id. Fourth, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the claimant's maximum remaining physical and mental ability to do sustained work on an ordinary basis. Id. § 404.1520(a)(4)(iv); Arakas v. Commissioner, 983

2

F.3d 83, 111 n.20 (4th Cir. 2020).  Fifth, the ALJ must consider whether—given the claimant's age, education, work experience, and RFC—there are jobs in the national economy which the claimant could perform.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant cannot adjust to other work, the ALJ must find that the claimant is disabled.  Id.  For the first four steps, the burden of proof lies with the claimant.  Lewis v. Berryhill, 858 F.3d 858, 861–62 (4th Cir. 2017).  At step five, the burden shifts to the Commissioner.  Id.

When reviewing the Commissioner's final decision, a court is limited to deciding whether the Commissioner supported his findings with substantial evidence and applied the correct law.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g).  "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion."  Dowling v. Commissioner, 986 F.3d 377, 383 (4th Cir. 2021) (citation omitted).  It is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted).  In reviewing for substantial evidence, federal courts "do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [their] judgment for that of the [ALJ]."  Id.  But courts also "do not reflexively rubber-stamp an ALJ's findings."  Lewis, 858 F.3d at 870.  Importantly, ALJs may not cherry-pick, misstate, or mischaracterize material facts, and they "must build an accurate and logical bridge from the evidence to their conclusions."  Arakas, 983 F.3d at 95, 99 (cleaned up).

## II.

The following facts are undisputed.  Pham was born on December 30, 1975, making him 50 years old.  AR 552.  He completed high school and took two years of college classes but did not earn a degree.  AR 120–21.  He was employed by the U.S. Postal Service, first as a data analyst from August 2005 to August 2006, then as a mail carrier from June 2006 to September

3

2014. AR 121. Pham is married and has two daughters, who are now approximately 18 and 14 years old. AR 122. He is five feet and four inches tall and weighs approximately 105 pounds. AR 630. Pham's first language is Vietnamese, and although he understands and speaks English, he needed the help of an interpreter during the hearings.

Pham suffers from neuropathic abdominal pain and arcuate ligament syndrome, which is also known as celiac artery compression. AR 630. Additionally, there is evidence in the record demonstrating that he has been treated for depression, high cholesterol, kidney stones, and small vessel ischemic white matter disease. AR 706, 788, 863. Although there is some evidence that Pham's disability began in September 2014 as a result of a work-related incident involving lifting a 50-pound parcel which strained the left side of his stomach, AR 96, Pham's medical records reflect that he had been suffering from pain on the left side of his body even before the incident, AR 863. For instance, in March 2013, Pham was treated by Dr. Tran, his treating physician, for kidney stones, pain on the left side of his body, and pain in the abdomen. AR 863. Nonetheless, Pham alleges his disability began on September 17, 2014, which is the date he had abdominal surgery—specifically, a laparoscopic lysis of adhesions with median arcuate ligament release—at the George Washington University Hospital. AR 552, 954. He applied for disability insurance benefits on May 12, 2016. AR 552. After the agency denied his application initially and upon reconsideration, Pham requested a hearing before an ALJ. AR 263, 275, 282.

A.

On February 14, 2019, ALJ John Martin held a remote hearing to determine whether Pham was disabled within the meaning of the Social Security Act.[1] AR 147. During the hearing,

---

[1] Pham appeared with counsel. AR 149.

4

Pham testified that he could stand for approximately 15 minutes before he needed to change positions, he could walk for 20 minutes before experiencing pain, he slept for three hours per night but would awaken because of pain, and he could occasionally watch TV for a few minutes before feeling too drowsy from his pain medications. AR 159, 163–64. The ALJ summarized the medications Pham was taking before questioning the vocational expert:

> It says he's taking Gabapentin, two pills at bedtime, sleep aid, pain control, prescribed by Dr. Churchill and Dr. Nelson. He's taking Nortriptyline, one to two pills at bedtime, also for sleep aid, also for pain control. These are prescribed by Dr. Erdek. He's taking Tizanidine, two milligrams, one pill, three times a day for pain control. Also prescribed by Dr. Erdek. And then, he [sic] taking Tramadol, one pill every six hours as needed. That one also says for pain control. That is prescribed by Dr. Tran. And then, we've heard him testify about this, hydrocodone. He's taking that one pill every six hours, as needed, pain control, also prescribed by Dr. Tran. Valacyclovir -- okay, that says it's for cold sores, and that's prescribed by Dr. Tran. The -- a lidocaine patch, also for pain control, prescribed by Dr. Tran. And Zetia, and that's for high cholesterol, and that's prescribed by Dr. Tran.

AR 161–62. The vocational expert testified that someone with Pham's age, education, past work experience, and physical limitations would be able to work as a data entry clerk, a cafeteria or dining room attendant, a light cleaner, a laundry worker, a general office helper, a sorter, or a packer. AR 169–72. The only question Pham's attorney posed to the vocational expert was whether there would be any jobs for someone who, due to his abdominal pain, would never be able to stoop or crouch. AR 173. The vocational expert testified that such a limitation "would eliminate the job number." Id.

On April 19, 2019, the ALJ issued a decision finding that Pham was not disabled. AR 200. Specifically, the ALJ found that Pham retained the RFC "to perform sedentary work" because he "could sit for six hours, stand for two hours and walk for two hours during an eight-hour workday." AR 206. The ALJ concluded that based on his age, education, work experience, and RFC, Pham could work as a general office helper, a sorter, a packer, or a mail and

5

addressing clerk. AR 209. The ALJ's opinion did not mention the medical opinions of Dr. Tran, Pham's treating physician. See AR 203–10.

On May 1, 2020, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing. AR 222. The Appeals Council identified several issues with the ALJ's decision. First, the Appeals Council explained that, during the hearing, the most recent medical records discussed were dated May 25, 2018; however, Dr. Tran continued to treat Pham after that date and produced medical records from November 29, 2018 indicating that Pham was likely to be absent from work for more than four times per month and that moving, bending, and lifting caused Pham's symptoms to worsen. AR 222. Therefore, the Appeals Council instructed the ALJ to "[g]ive consideration to medical records dated after May 25, 2018." AR 223. Second, the Appeals Council instructed the ALJ to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to the evidence of record in support of assessed limitations." AR 223. Third, the Appeals Council emphasized that the ALJ was required to evaluate the medical opinions of Dr. Tran pursuant to the treating physician rule, 20 C.F.R. § 404.1527, and "explain the weight given to such opinion evidence." AR 223.

## B.

On June 21, 2022, a new ALJ, Andrew Emerson, held a remote hearing to determine whether Pham was entitled to receive disability insurance benefits in light of the Appeals Council's instructions.[2] AR 116. During the hearing, Pham testified that he was not helping raise his daughters, he had no hobbies, and he napped two to three times a day with each nap lasting about two hours. AR 124, 130. He stated that he could walk for about two blocks before

---

[2] Pham appeared with counsel. AR 117.

6

he had to take a 15-minute break due to tiredness, he could stand for about 30 minutes before he had to sit, he could sit for about 45 minutes before he had to stand, and he could lift 10 pounds or less. AR 126. He also stated that since September 17, 2014, he had fallen three to four times; he could not reach because of pain in his ligaments; and he occasionally felt numbness in his hands. AR 127. His wife cooked for him and left food in the refrigerator to heat up. AR 128. He occasionally accompanied his wife to the grocery store, washed the dishes, and put his clothes in the laundry machine. AR 128. As for his medications, he took doloxia, gabapentin, tizanidine, rosuvastatin, hydrocodone, and melatonin—all of which caused drowsiness and made it difficult to focus. AR 125. A medical expert ("ME"), who testified during the hearing, had the following dialogue with the ALJ:

> **ALJ:** I think based on my reading of the file, and looking at the characterizations applied by the radiologists or the other folks that were reading those MRAs -- MRAs, mostly -- MRAs -- they're characterizing the median arcuate ligament syndrome and the celiac artery compression -- it's pretty universal -- they're characterizing it as mild, both a mild -- of course, after surgery. Now, I want to couch that. The surgery was done . . . on September 17th, 2014. Thereafter, it seems fairly universal that they're characterizing the ligament syndrome as mild, the celiac artery compression as mild. Do you -- is that a characterization that you would agree with, that these are -- this is a mild impairment called -- causing mild celiac artery compression?

> . . .

> **ME:** I think radiologically that it's not a significant or severe medical impairment. This all has to do with the plain and the clarification. As you know, you know, I cannot make an opinion on the pain, unless it's something very obvious. But -- and I looked very carefully. And some of the characterization of the pain, also, you know, where, you know, can corroborate with the clinical -- I mean, with the imaging, you know.

> . . .

> **ALJ:** So it's your belief that the subjective complaints of pain are not consistent with the imaging that was done and the clinical picture here?

> . . .

7

**ME:** [W]hen we have these cases, you know, it's a word that we use that's called plausibility, meaning you know, like I look at all these records and they do always just start it, and all of them actually mentioned are mild. It is plausible, I mean it's possible that this person can be in pain that is excruciating and incapacitating, and I have to say, with all due respect, this is not the case, Your Honor, in my medical opinion. So I don't see a mild compression, or you know, obstruction. It's not even a significant obstruction. And plus the pain medication can remove, you know.

**ALJ:** Typically, I guess, somebody with a mild compression, the pain doesn't seem appropriate. The pain level reported doesn't seem -- it doesn't align with the physiology. Is that your understanding?

**ME:** Yes, Your Honor. You know, I can note -- I have to be careful about how I explain this because I cannot make an opinion about pain, as you know. That's reserved to you with the information. But you were asking me if you see that this pain that he is describing corroborate with -- by your -- I mean, the imaging -- there's a lot of images, and the answer, you know, with all due respect, would be no, Your Honor. I don't see it that way.

AR 131–34.

Additionally, when the vocational expert ("VE") testified, the ALJ posed two

hypotheticals:

**Hypothetical #1:** The individual shares Pham's age, education, and work experience, and is limited to light work. The individual can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual cannot climb ladders, ropes, and scaffolds. The individual would need to avoid concentrated exposure to wetness, excessive vibration, hazardous moving machinery, and unprotected heights. AR 139–40.

**Hypothetical #2:** The individual shares Pham's age, education, and work experience, and is limited sedentary work. All of the same postural and environmental limitations as described in the first hypothetical apply. AR 141.

As to the first hypothetical, the vocational expert testified that an individual with those

characteristics could work as a routing clerk, an inspector and hand packager, or a warehouse

checker. AR 140. As to the second hypothetical, the vocational expert testified that an

individual with those characteristics could work as a data entry clerk, a records preparer, a

semiconductor bonder, or a final assembler. AR 142. Pham's attorney then posed the following

questions:

8

**Attorney:** If we added to the Judge's hypothetical 1 and 2 that the hypothetical individual could only occasionally reach and feel with the bilateral upper extremities, could they perform their past work or any of the other jobs you mentioned today?

**VE:** No, sir.

**Attorney:** And if we had a hypothetical individual, same age, education, and past work as the Claimant [and] the hypothetical individual could sit one hour, stand and walk one hour each, could they perform their past work or other work?

**VE:** No, not on a full-time basis. No.

**Attorney:** And then if we had a hypothetical individual same age, education, and past work, who had the functional limitations set out by treating physician, Dr. Tran, who has seen the Claimant for six years . . . noting the hypothetical individual could only sit for one hour, stand one hour, walk one hour of an eight-hour workday, could they perform their past work or other jobs?

**VE:** No.

AR 143–44.

On July 11, 2022, the ALJ issued his decision finding that Pham was not disabled within the meaning of the statute. AR 225. Specifically, the ALJ concluded that Pham "had the residual functional capacity to perform light work . . . except the claimant can occasionally climb ramps and stairs, balance[,] stop, kneel, crouch, and crawl." AR 233. As to the medical opinions of Dr. Tran, the ALJ did not give those opinions controlling weight. AR 237–38. Rather, he stated:

- Dr. Tran's opinion that Pham was unable to return to work was "not persuasive because the conclusion of disability is reserved to the Commissioner." AR 237.

- Dr. Tran's January 8, 2015 statement, "Please excuse from work, will require time off," was "minimally persuasive because the conclusion of disability is reserved to the Commissioner and appears to be a far shorter period of time than 12 months." Id.

- Dr. Tran's opinion "that the claimant could not walk 200 feet without stopping to rest" was "minimally persuasive" because (1) Pham "does not suffer from any impairments to the lower extremities that effect [sic] his ability to walk"; (2) examinations showed that Pham "had a normal gait"; (3) Pham "conceded he could

walk 30 minutes before stopping"; and (4) the opinion was "not consistent with Dr. Tran's largely normal examinations of the claimant and the findings of mildly abnormal imaging taken of the claimant's abdomen." AR 237–38.

- Dr. Tran's opinion that Pham "would be absent from work for more than four times a month" was "not very persuasive because there [were] no clinical signs or laboratory studies referred to for support of the assessed limitation." AR 238. Additionally, "Dr. Tran's examination of the claimant just three weeks [earlier] was largely normal," and "Dr. Tran's opinion is not consistent with the mildly abnormal imaging taken of the claimant's abdomen." Id.

- Dr. Tran's opinions that Pham could sit, stand, and walk for one hour; that Pham could occasionally lift five pounds; and that Pham's condition was debilitating were "not persuasive" because they were inconsistent with a "normal exam on the same day" and because "the conclusion of disability is reserved to the Commissioner." Id.

In sum, because the ALJ found that Pham could perform the jobs identified by the vocational expert, he concluded that Pham was not disabled. AR 242–43.

On January 23, 2023, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing because the ALJ employed the incorrect standard in evaluating the opinion evidence in the record. AR 258. Specifically, the ALJ erroneously applied 20 C.F.R. § 404.1520c(a), which states that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's] medical sources." But because Pham's application was filed before March 27, 2017, the ALJ was required to apply 20 C.F.R. § 404.1527(c), which gives controlling weight to a treating physician's medical opinions absent persuasive, contradictory evidence. Accordingly, the Appeals Council instructed the ALJ to "[g]ive further consideration to the opinion evidence of record in accordance with the prior rules set forth in 20 CFR 404.1527" and to "[g]ive further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations." AR 258.

10

C.

On April 22, 2024, ALJ Andrew Emerson held what amounted to a fourth remote hearing to determine whether Pham was entitled to receive disability insurance benefits.[3]  AR 80.

During the hearing, Pham testified as to the pain he was experiencing:

> **Rep:** Mr. Pham, could you tell us in your own words why you wouldn't be able to work on a full-time basis even if it was an easy job where you didn't have to lift or carry anything?  What would keep you doing a job where you could sit most of the time?

> **Pham:** So for a long time, like I just presented a while ago, I am still tolerating my chronic pain on the left side of my stomach, and also I'm having issues with my foot as well, and I'm having to use a pump to help with the swollen [sic] that is on my foot, and I already mentioned that I had physical therapy with two injections, but it didn't heal totally.  So I'm using medication right now to help with this chronic pain, and when I take medication, there are side effects, and so that affects my ability to work because of my lack of concentration, and I also get dizziness, a lack of energy, and also other side effects from the medication that will not allow me to work properly.

> ...

> **Rep:** Could you describe – and, again, always going back to prior to June 30th, 2021 -- what a good day was like and then describe for me what a bad day was like.

> **Pham:** Yeah, so my good day is when the pain is less.  So I usually wake up around 9 or 10 a.m. and then after that I would have time to check my email.  I would listen to the news.  I would listen to sermons or homily and then I would double-check regarding my health.  I would talk to my doctor and my insurance, so meaning I have energy to do things that I want to do, and a bad day is when I have more pain, and when that happens, I don't have time because I would drink a lot of medication and then that would make me dizzy, tired, and I would have a lot of fatigue.  Then I would have to stay in bed more often, and I don't have time for anything else.

> **Rep:** Okay.  So again, prior to June 30th of 2021, how many good days did you have compared to how many bad days you had?  And we'll use the course of a month.  In a 30-day period, how many good days and how many bad days?

---

[3] Pham appeared for a remote hearing before ALJ Andrew Emerson on December 11, 2023; however, because the agency failed to secure a Vietnamese interpreter, the hearing had to be continued.  AR 110–11.  At both the December 11, 2023 hearing and the April 22, 2024 hearing, Pham appeared with a non-attorney representative.  AR 80, 110.

11

**Pham:** So it would be around 20 days that are bad days, and I would have to take medication, and it's not just one, but it's four to five medications, and then the remaining ten days, it's not that I don't have any pain. It's just that the pain is tolerable and less, and so it's not that it's totally healed. I still have the pain, but it's just less.

AR 90, 94–95. The ALJ posed two hypotheticals to the vocational expert:

**Hypothetical #1:** The individual shares Pham's age, education, and work experience, and is limited to light work. The individual can only stand and/or walk for five hours in an eight-hour workday. The individual can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The individual can never climb ladders, ropes, and scaffolds. The individual would need to avoid concentrated exposure to extreme cold, wetness, hazardous moving machinery, excessive vibration, and unprotected heights. AR 99.

**Hypothetical #2:** The individual shares Pham's age, education, and work experience, and is limited to sedentary work. All of the same postural and environmental limitations as described in the first hypothetical apply. AR 100.

As to the first hypothetical, the vocational expert testified that an individual with those limitations could work as a data clerk, an order caller, an assembler, or a collator operator. AR 99–100. As to the second hypothetical, the vocational expert testified that an individual with those limitations could work as a data clerk, a ticket checker, a dowel inspector, or a laminator.

AR 100–01. Pham's representative then posed the following questions:

**Rep:** So if an individual had good days and bad days and the bad days precluded them from performing a full eight-hour workday where they were only able to do a full workday one-third of the time . . . [w]ould that be work-reclusive of full-time employment?

. . .

**VE:** That would likely result in termination.

**Rep:** What would be employer tolerance for absenteeism?

**VE:** For unskilled, entry-level work, typically missing up to one day per month. For semi-skilled, up to two. Anything beyond that would likely result in termination.

. . .

12

**Rep:** And if the individual were limited to occasional handling and fingering objects, what would be the impact on the jobs that you cited?

**VE:** It would seriously eliminate the majority of work.

AR 102–04.

On June 27, 2024, the ALJ issued a decision finding that Pham was not disabled. AR 43. Specifically, the ALJ concluded that "the claimant had the residual functional capacity to perform light work," including working as an order caller, a small products assembler, a collator operator, a ticket taker, an inspector, or a laminator. AR 50, 60. The ALJ emphasized that "the claimant's abdominal examinations [were] largely normal" and that Pham "remained able to wash laundry, cook, clean his home, and walk 30 minutes; activities at least consistent with light exertion." AR 54. Therefore, the ALJ concluded that although Pham's impairments "limit[ed] his residual functional capacity to a range of work in the light exertional category," id., there were a "significant number of jobs in the national economy" that Pham could perform, AR 60. As to the medical opinions of Dr. Tran, the ALJ found the following:

- Dr. Tran's opinion "that the claimant was not able to walk 200 feet without stopping" was assigned "modest weight" because the opinion was inconsistent with (1) evidence suggesting that "the claimant did not suffer from any impairments to the lower extremities that effected [sic] his ability to walk"; (2) Dr. Tran's "largely normal examinations of the claimant"; (3) "the mildly abnormal imaging taken of the claimant's abdomen"; and (4) the claimant's concession that "he [could] walk 30 minutes before stopping." AR 55.

- Dr. Tran's opinion that Pham would have good days and bad days, and Dr. Tran's estimation that Pham would be absent for more than four times per month because of impairments or treatments, were assigned "minimal weight" because "Dr. Tran did not refer to clinical signs or laboratory studies for support of the assessed limitation," and his opinions were inconsistent "with the mildly abnormal imaging taken of the claimant's abdomen" and the "largely normal" "examination of the claimant performed just three weeks [earlier]." AR 55–56.

- Dr. Tran's opinion that Pham "could sit, stand, and walk for only one hour, and occasionally lift five pounds" was assigned "modest weight" because that opinion was inconsistent with "Dr. Tran's examination of the claimant [which] was essentially normal." AR 56.

13

- Dr. Tran's opinions that Pham "would miss more than 4 days of work a month," "would be off-task 20% of the workday," and "could sit, stand, and walk less than 2 hours" were assigned "minimal weight" "for the reasons explained above." Id.

The Appeals Council denied Pham's request for review, thereby rendering the ALJ's decision a final decision of the Commissioner. AR 30. Pham timely filed his appeal of that decision. [Dkt. No. 1].

### III.

The issue before the Court is whether the ALJ's June 27, 2024 opinion is supported by substantial evidence. Pham argues that the ALJ failed to provide good reasons for rejecting the opinions from Dr. Tran, Pham's treating physician, in violation of 20 C.F.R. § 404.1527(c)(2). The Commissioner argues that the ALJ properly evaluated Dr. Tran's medical opinions consistent with the treating physician rule.

### A.

Because Pham's application was filed before March 27, 2017, the ALJ was required to assess the medical opinions in the record in accordance with the treating physician rule in effect at that time. 20 C.F.R. § 404.1527(c)(2). That rule provided that ALJs must give a treating physician's medical opinions as to the nature and severity of the claimant's impairment "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "is not inconsistent with the other substantial evidence" in the record.[4] Id.

---

[4] A treating physician is defined as an "acceptable medical source who provides [the claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1527(a)(2).

14

If an ALJ determines that the treating physician's opinion is not entitled to controlling weight—either because it is unsupported by or inconsistent with the evidence in the record—the ALJ must turn to the following factors to determine the appropriate weight to give to the treating physician's opinion: (1) the length of the physician's treatment relationship with the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) whether the medical evidence in the record supports the physician's opinion; (5) the consistency of the physician's opinion with the entirety of the record; and (6) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(6); Easterbrook v. Kijakazi, 88 F.4th 502, 512 (4th Cir. 2023). "Using these factors, the ALJ must . . . articulate a 'good reason' for the less-than-controlling-weight afforded to the treating source's opinions." Easterbrook, 88 F.4th at 512–13 (citing 20 C.F.R. § 404.1527(c)(2)).

Importantly, the ALJ must "give adequate attention," Shelley C. v. Commissioner, 61 F.4th 341, 355 (4th Cir. 2023), to "all of the enumerated factors in deciding what weight to give a medical opinion," Arakas, 983 F.3d at 107 n.16 (emphasis in original). Although an ALJ is "not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that he meaningfully considered each of the factors before deciding how much weight to give the opinion." Dowling, 986 F.3d at 385 (emphasis in original). "Mere acknowledgement of the regulation's existence is insufficient and falls short of the ALJ's duties." Shelley C., 61 F.4th at 354. And it goes without saying that an ALJ cannot "omit[] or disregard[]" certain factors in his evaluation of the treating physician's opinion. Ricks v. Commissioner, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010); see Arakas, 983 F.3d at 107 n.16.

15

Here, the ALJ evaluated several opinions offered by Dr. Tran, Pham's treating physician.[5] AR 55. First, the ALJ assigned "modest weight" to Dr. Tran's opinion "that the claimant was not able to walk 200 feet without stopping." AR 55. The ALJ explained that Dr. Tran's opinion was inconsistent with (1) evidence suggesting that "the claimant did not suffer from any impairments to the lower extremities that effected [sic] his ability to walk"; (2) Dr. Tran's "largely normal examinations of the claimant"; (3) "the mildly abnormal imaging taken of the claimant's abdomen"; and (4) the claimant's concession that "he [could] walk 30 minutes before stopping." AR 55. Second, the ALJ assigned "minimal weight" to Dr. Tran's opinion that Pham would have good days and bad days and to Dr. Tran's estimation that Pham would be absent from work for more than four times per month because of impairments or treatments. AR 55–56. The ALJ explained that "Dr. Tran did not refer to clinical signs or laboratory studies for support of the assessed limitation," and that his opinion was inconsistent "with the mildly abnormal imaging taken of the claimant's abdomen" and the "largely normal" "examination of the claimant performed just three weeks [earlier]." AR 56. Third, the ALJ assigned "modest weight" to Dr. Tran's opinion "that the claimant could sit, stand, and walk for only one hour, and occasionally lift five pounds" because that opinion was inconsistent with "Dr. Tran's examination of the claimant [which] was essentially normal." AR 56. Fourth, the ALJ assigned "minimal weight" to Dr. Tran's opinions that Pham "would miss more than 4 days of work a month," "would be off-task 20% of the workday," and "could sit, stand, and walk less than 2

---

[5] The Commissioner does not dispute that Dr. Tran was Pham's treating physician. Nor could he. There is abundant evidence in the record demonstrating that Dr. Tran had been Pham's treating physician since at least 2013, which was before the onset of Pham's disability, and was still treating him at least as of April 2024. See AR 863, 2894.

hours." AR 56. The ALJ stated that "minimal weight" was appropriate "for the reasons explained above." AR 56. In sum, the ALJ found:

> Dr. Tran's opinions are not accorded controlling weight because the objective clinical findings do not support Dr. Tran's assessments. As noted above, Dr. Erdek stated that the claimant's abdominal pain is of unknown etiology. There is no clear explanation for this pain; nor does any imaging suggest any source of the pain. Even Dr. Tran's more resent [sic] reports are inconsistent with his conclusions. For example, on February 26, 2021, Dr. Tran described the claimant to be well-developed and well-groomed. He was not ill-appearing or toxic appearing. Physical examination revealed that the claimant's abdomen was flat with no signs of distension. Palpations revealed no hepatomegaly, splenomegaly, or mass. There was no abdominal tenderness. The remainder of the physical examination was within normal limits. Dr. Tran recommended that the claimant should get at least 150 minutes per week of moderate-intensity aerobic activity or 75 minutes per week of vigorous aerobic activity, or a combination of both, preferably spread throughout the week. Such a recommendation is not consistent with an inability to perform even sedentary work.

AR 56.

The ALJ's analysis does not comport with the treating physician rule. Specifically, after the ALJ concluded that Dr. Tran's opinions were not entitled to controlling weight, the ALJ was required to use the six factors listed in 20 C.F.R. § 404.1527(c) to determine what less-than-controlling weight to give to Dr. Tran's opinions. But the ALJ disregarded the 20 C.F.R. § 404.1527(c) factors. For example, he did not discuss at all the length of Dr. Tran's treatment relationship with Pham, which had existed for at least 10 years. AR 2894. The ALJ also did not consider the frequency of Dr. Tran's examinations of Pham or whether Dr. Tran had a particular specialization. Moreover, the ALJ did not explain why he allotted Dr. Tran's opinions "modest" and "minimal" weight. See Shelley C., 61 F.4th at 355 (holding that "the ALJ's decision to allot 'little weight'" to the treating physician's opinion was "erroneous" because the "ALJ did not properly consider" the "length, frequency, and nature" of the claimant's relationship with her treating physician).

17

Additionally, the ALJ ignored significant evidence from multiple specialists who treated Pham for his consistent reports of debilitating pain. For example, pain specialists at the Johns Hopkins Treatment Center had been treating Pham for his complaints of pain for over one year. The records from those doctors supported Dr. Tran's conclusion that Pham's pain was debilitating and prevented him from working. Those records indicate that Pham was treated by specialists at Johns Hopkins on multiple occasions, including in July 2015, September 2015, October 2015, December 2015, and March 2016. AR 1316, 1319, 1322, 1327. In every visit, Pham claimed feeling pain and having problems with the side effects of his pain medication. For example, in 2015, Dr. Kau Korto recorded that Pham had described his pain as a 6/10 and that, as a result of his pain medication, "he feels tired, sleepy, and he is awaking several times at night by nightmares as he sometimes wake [sic] up screaming." AR 1319. Similarly, in 2016, Dr. Michael Erdek reported that Pham had a "history of accurate ligament syndrome constricting the celiac artery status post surgery with persistent pain." AR 1316. Pham was experiencing "severe pain exacerbations in his left upper quadrant" and reported to the physician that "occasionally he has had episodes when he has been lying on his left side while sleeping and wakes up after three hours with a pain exacerbation." Id. These records corroborate Dr. Tran's evaluations of Pham and demonstrate that, rather than engaging in a fulsome review of the record, the ALJ cherry-picked evidence that contradicted Dr. Tran's reports.

The Fourth Circuit has held that "substantial evidence does not support" an ALJ's decision where the ALJ "fail[s] to apply the factors listed in 20 C.F.R. § 404.1527(c) to decide how much weight [a treating physician's opinion] should be accorded." Arakas, 983 F.3d at 107–08 (emphasis in original); see also John S. v. O'Malley, No. 7:22-cv-438, 2024 WL 1955104, at *9 (W.D. Va. Mar. 5, 2024) (remanding because the ALJ "did not engage in any

18

discussion of how the six factors under [§ 404.1527(c)] applied to th[e] treating providers' opinions"). Because the ALJ failed to evaluate Dr. Tran's medical opinions—and the medical opinions of the other physicians who treated Pham for his pain—in accordance with 20 C.F.R. § 404.1527(c), the ALJ's decision was not supported by substantial evidence.

B.

Although Pham did not raise this issue in his pleadings, there is an additional flaw in the ALJ's opinion—namely, that the ALJ violated Fourth Circuit precedent by citing to the lack of objective medical evidence to discount Pham's subjective complaints of pain.

Two Fourth Circuit cases guide this analysis. Arakas involved a claimant who alleged disability based on various conditions, including fibromyalgia, carpal tunnel syndrome, and degenerative disc disease. 983 F.3d at 89. The claimant was being treated by a rheumatologist from 1996 to 2017 who indicated that the claimant suffered from chronic and diffuse muscle pain, stiffness, and fatigue. Id. at 91. At the hearing, the claimant testified that her pain would flare up for a week, leaving her unable to work for half a month. Id. at 93. She struggled to sit and could stand only for two hours. Id. She experienced poor concentration and grogginess, and she did not obtain any significant improvement from her treatment. Id. at 93–94. The ALJ denied the claimant's application for benefits, finding that the claimant's "subjective complaints regarding the severity, persistence, and limiting effects of her symptoms were 'not reliable' and not 'completely consistent with the objective evidence.'" Id. at 94. The Fourth Circuit reversed, stating that the claimant was "entitled to rely exclusively on subjective evidence to prove that her symptoms were so continuous and/or severe that they prevented her from working a full eight hour day." Id. at 96 (cleaned up). Of most relevance for Pham's case, the Fourth Circuit held that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of

19

multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." Id. at 97.

Recently, the Fourth Circuit reiterated that holding in Hultz v. Bisignano, 162 F.4th 111 (4th Cir. 2025). Hultz involved a claimant who alleged disability based on extreme fatigue and pain as a result of suffering from various conditions, including lupus, fibromyalgia, depression, and anxiety. Id. at 115. At the hearing, the claimant testified that she experienced four to eight flares of pain and fatigue each month; and that if she sat for a long period of time, she experienced stiffness and pain. Id. at 118. The ALJ denied the claimant's application for benefits, citing the claimant's testimony about the intensity, persistence, and limiting effects of her symptoms as "not entirely consistent with the medical evidence and other evidence in the record." Id. at 120. The Fourth Circuit reversed, analogizing the case to Arakas. Specifically, the Court reiterated that "ALJs may not rely on objective medical evidence even as just one of multiple factors to discount a claimant's subjective complaints regarding symptoms." Id. at 122.

In Pham's case, the ALJ violated both Arakas and Hultz when he discounted Pham's subjective complaints about pain and the effect of his pain medications on his ability to work. Specifically, the ALJ stated in his June 27, 2024 decision:

> The record also contains a diagnosis of chronic pain syndrome. However, this condition is a constellation of symptoms and not a medically determinable impairment. A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. Here, there is no objective evidence of abnormalities shown by medically acceptable clinical or laboratory diagnostic techniques. . . . [T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence.

AR 50–51. This quote clearly misstates the record and not only demonstrates that the ALJ discounted Pham's subjective complaints about his symptoms based on the lack of objective medical evidence in the record, but is also inconsistent with Arakas and Hultz, both of which

20

make clear, "ALJs may not rely on objective medical evidence . . . to discount a claimant's subjective complaints regarding [his] symptoms." Arakas, 983 F.3d at 97. This error provides an independent basis for the Court's conclusion that the ALJ's decision was erroneous and, therefore, must be reversed.

C.

Having reversed the ALJ's decision for failing to afford the proper deference to the treating physician's evaluation of Pham's pain and side effects from the medications taken to address that pain, the only issue remaining is the appropriate remedy. This Court has the authority to affirm, modify, or reverse an ALJ's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remanding with a direction to award benefits is an appropriate remedy if the record "clearly establishes the claimant's entitlement to benefits and [that] another ALJ hearing on remand would serve no useful purpose." Arakas, 983 F.3d at 111.

In this case, there is extensive and consistent medical evidence demonstrating that Pham suffers from chronic and severe pain ranging from a 4/10 to an 8/10 level of severity and significant side effects from his pain medication, all of which justify an award of benefits without another hearing. For example, in December 2014, a physician at the Reston Hospital Center ordered that Pham engage in pain management after Pham reported that, due to abdominal pain in the left upper quadrant and epigastric area, he was experiencing nausea, vomiting, dizziness, and headaches. AR 1203–05. In January 2015, a lumbar evaluation at the Jackson Clinics indicated that Pham suffered from "[f]unctional instability of lumbopelvic region," "[t]horacic spine and rib dysfunction," "[d]ecreased lumbar spine active range of motion," [l]ower extremity and upper extremity muscle weakness," "[s]oft tissue dysfunction of abdominal region," and "[g]eneralized physical deconditioning." AR 1259. A physical therapy

21

report from the Jackson Clinics stated that Pham's left abdominal pain reached his mid-chest and worsened when Pham walks, turns his body, lifts, and reaches over his head. AR 1265. The report also indicated that Pham had weak core and leg muscles, had dysfunction in his thoracic spine, suffered from postural deficits, and experienced tenderness in his abdomen. AR 1265. In February 2015, a physician at the Jackson Clinics diagnosed Pham with abdominal pain, chronic pain syndrome, scar conditions, fibrosis of the skin, and muscle weakness. AR 1257. Specifically, the physician reported:

> The patient presents with a physical therapy diagnosis of muscle weakness/imbalance. Additionally, the dysfunction of thoracic spine, ribs and SI are likely contributing to patient's symptoms. He appears motivated to fully participate in PT and the associated HEP. Due to the ongoing nature of patient's problems and variable presentation of pain, assessment will be ongoing.

Id. Despite ongoing physical therapy, in July and August 2015, providers at the Cypher Chiropractic Center indicated that Pham was experiencing pain at a level seven and suffered from cervical nonallopathic lesions, lumbar region lesions, and neck sprain. AR 1310. Based on Pham's level of pain, the provider wrote: "I do not think returning to work is an option for him. I would consider this a permanent condition, with a guarded prognosis." AR 1312.

Pham's medical records from the Johns Hopkins Pain Treatment Center also demonstrate that Pham has continuously suffered from severe abdominal pain. In July 2015, a physician explained that Pham suffered from "arcuate ligament syndrome that was stenosing his celiac artery," which was likely "causing his pain." AR 1972. The physician described the pain as a "chronic problem," AR 1465, and indicated that Pham experienced "chronic left upper and lower quadrant abdominal pain" in the location shown below:

22



See diagram for area of pain. X is where the majority of his pain is. The circled area is the area he experiences allodynia even to light touch. Hypersensitivity to pin-prick. The four round circles are areas of scar from past abdominal surgery.

AR 1467. Because of this pain, Pham had undergone extensive workups, including five CT scans, three MRI/MRAs, two x-rays, and two ultrasounds of his abdomen; three x-rays of his chest; one capsule endoscopy; and one upper endoscopy. AR 1465. The physician also indicated that Pham suffered from "sedation, dizziness, nausea, vomiting, constipation, physical dependence, tolerance, and respiratory depression" due to his "long term opioid use" for pain management. AR 1467. In a November 2015 report, a physician at Johns Hopkins wrote:

> Andy Pham is a 39 y.o. Male with chronic left upper and lower quadrant abdominal pain that was thought to be caused by arcuate ligament syndrome constricting the celiac artery with persistent pain status post-surgery for this condition. He is otherwise a healthy individual. He has had several imaging studies and workup to rule out other etiologies. It appears that he has had abdominal pain of unknown etiology. He has failed multiple medication trials as well as nerve block and surgery with no clear explanation for his pain. The pain is most likely neuropathic in origin vs musculoskeletal, however there does not appear to be any apparent deformity to suggest hernia or abdominal tear, nor does any imaging suggest that any source of the pain. In any regard it does not appear that he can lift the weights he was used to at his current job.

AR 1349. A year after that report, a November 2016 evaluation by a physician in the Johns Hopkins Pain Treatment Center stated that Pham continued to suffer from chronic pain and had been "experiencing increasing dizziness and nausea." AR 1541. And a May 2018 report from Johns Hopkins stated that Pham had been continuously returning to the facility for treatment "on

23

account of exacerbation of his pain," that his "[m]usculoskeletal exam revealed slightly altered gait," and that a physical examination revealed "tenderness on the left side more pronounced in the upper left quadrant." AR 1661.

More recent medical records indicate that Pham's pain has not subsided. For example, 2020 and 2021 medical records from Town Center Family Medicine indicate that Pham was being treated for abdominal wall pain and chronic pain syndrome, that his symptoms worsened with movement, and that his abdomen was tender. AR 2450–52, 2461. Similarly, in 2022, a physician at the Blaustein Pain Treatment Center observed that Pham's "left sided abdominal pain [was] worsening since his last visit," indicated that Pham reported an 8/10 level of pain severity, and noted that Pham was taking "chronic opioids which allow him to function." AR 1767, 1770.

None of Pham's complaints of pain appear to be exaggerated. Indeed, when the Commissioner's counsel was asked during oral argument whether there was any evidence in the record showing that any medical provider indicated that Pham was malingering or exaggerating his pain, she pointed to only one statement by the ALJ, who inaccurately summarized Dr. Erdek's evaluation of Pham's condition:

> The early notes from Dr. Erdek indicate that the claimant seemed to [sic] preoccupied with obtaining a 'disability' letter from a physician. Dr. Erdek stated that the claimant's "abdominal pain is of unknown etiology. There is no clear explanation for this pain; nor does any imaging suggest any source of the pain." The claimant's Visceral Arterial Duplex does not show any evidence of medial arcuate ligament syndrome. Yet, the claimant's left-sided abdominal pain is controlled with medication (Gapapentin) for the most part; "3-4 out of 10."

AR 52, 54. Counsel for the Commissioner conceded during oral argument that Dr. Erdek's evaluation does not establish that Pham's complaints of pain were exaggerated, and counsel did not point to any statement from any other expert to support a concern that Pham's description of his pain was insincere or the result of malingering. In sum, there are hundreds of pages of

24

medical reports in the record containing similar evaluations: Although the sources of Pham's pain may be unclear, there is irrefutable evidence that Pham suffers from chronic and severe pain, which clearly renders him unable to perform any of the jobs identified by the vocational expert, as he would be absent from work for too many days.

That Pham has consistently been prescribed various types of medication to address his pain, including narcotics, bolsters the conclusion that Pham is unable to sustain work on an ordinary basis. In May 2016, Pham was prescribed dextrose, fentalNYL, gabapentin, hydrocodone, lactated ringers, lyrica, nortriptyline, ondansetron, oxycodone, rabeprazole, tizanidine, and tramadol. AR 633. Records from September 2016, December 2016, and January 2017, show that Pham was prescribed hydrocodone, a lidocaine patch, nortriptyline, oxycodone, pregabalin, tizanidine, and tramadol. AR 690, 708. In June 2022, he was taking tizanidine, hydrocodone, tramadol, lidocaine, duloxetine, and gabapentin. AR 765–67. In February 2023, he was taking tramadol, lidocaine, duloxetine, gabapentin, tizanidine, hydrocodone, and nortriptyline. AR 787–88. Throughout this timeframe, Pham continuously reported adverse side-effects, including poor concentration, drowsiness, confusion, poor memory, and vomiting. AR 682, 690, 706, 1213. These prescriptions are relevant to Pham's case because they both corroborate his complaints of severe pain and demonstrate that, while taking these medications, Pham would not be able to sustain regular, full-time work.

The vocational expert's responses to Pham's representative's questions only confirm that Pham cannot sustain any type of full-time work, including his past work as a data analyst and mail carrier. When asked whether a hypothetical person with Pham's background and RFC could sustain full-time employment if he was absent from work for 20 days per month, the vocational expert testified that the absenteeism "would likely result in termination." AR 103.

Specifically, the vocational expert testified that for "unskilled, entry-level work," typically missing more than one day per month "would likely result in termination." Id. This testimony clarifies that Pham could not work at any entry-level job unless he could sustain full-time hours, which he clearly cannot do.

Finally, remanding Pham's case for "yet another ALJ hearing would be not only pointless, but also unjust." Arakas, 983 F.3d at 112. In Arakas, the Fourth Circuit stated that it "cannot delay justice any longer" after the claimant, "[d]espite having a meritorious claim," had "been denied disability benefits and forced to undergo costly litigation for ten years"—including "multiple denials and reconsideration requests, two ALJ hearings, and two federal suits"— "solely because of the agency's errors." Id. Here, Pham has experienced multiple denials and four ALJ hearings, one of which was continued because the agency failed to obtain a Vietnamese interpreter, and two of which resulted in the ALJ applying the wrong legal standard. Moreover, Pham has been litigating his entitlement to receive disability insurance benefits since May 12, 2016, which was nearly 10 years ago. See AR 552. To require Pham to continue to litigate his entitlement to benefits in a fifth hearing would be a grave injustice given that Pham has been denied the benefits to which is clearly entitled.

## IV.

For all these reasons, the Commissioner's decision has been reversed, and the Court has remanded Pham's case for a calculation of benefits.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 27 day of May, 2026.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

26